McBride, judge.
On February 20, 1953, Bernard J. Fon-seca, who owned the premises 7011 Broad Place, employed plaintiff, which is a co-partnership engaged in the business of real estate broker, to find a buyer for the property for $39,000 cash, or any other price that might subsequently be agreed upon. Defendant obligated himself to pay the broker the commission stipulated for in the contract in the event of a sale being effected during the term of six months from the date of the contract “or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract.”
About August 12, 1953, a Mrs. Baus, plaintiff’s saleslady, presented to defendant a written offer signed by Dr. J. W.. Davenport, Jr., to purchase the property for $30,000 cash; however, the offer- was conditioned upon the ability of Dr. Davenport to sell his own property, 1719 Napoleon Avenue. Defendant rejected this offer for the reason that the price offered was not suitable and for the further reason that he objected to the condition stipulated by Dr. Davenport. At no subsequent time whatever did the plaintiff submit any other offer or offers to defendant.
The contract of employment between plaintiff and defendant terminated by its own provisions on August 20, 1953, without plaintiff having found anyone ready, able and willing to purchase; the defendant would not renew the listing contract. On October 24, 1953, it appears that Dr. Davenport listed his property, 1719 Napoleon Avenue, for sale with plaintiff and also with Sullivan & Trenchard, Inc., another firm of realtors, and attempts were made by both agents to sell Dr. Davenport’s property. Mrs. Baus held open house on the property on Sundays in the hope of finding . ■ a purchaser, and Sullivan . & Trenchard, Inc., took other steps to dispose of the property. Be that as it .may, Dr. Davenport. made a sale of his. property through the efforts of Sullivan &■ Trenchard, Inc., who submitted the purchase offer on November 18,, 1953. Thereupon Dr. Davenport, without the intervention of plaintiff, made a written offer to defendant to purchase ,7011 Broad Street for $31,500 cash. Defendant agreed to sell to Dr. Davenport and the formal act of sale took place in the month of February 1954.
Notwithstanding that November 18, 1953, when the agreement of sale was entered into between Dr. Davenport and defendant, was a date subsequent to the expiration of plaintiff’s contract with defendant, plaintiff sued defendant for a commission of $1,360, plus $100 as .attorney’s fees, alleging that although defendant had rejected Dr. Davenport’s offer of August 12, 1953, further negotiations took place between the parties which led to the ultimate, sale of defendant’s property to Dr. Davenport. It is further averred.that the sale was a direct result of plaintiff’s efforts and was made to a purchaser who had been obtained by plaintiff during the term of employment. In answer to the suit defendant entered a general denial. After the case was heard on its merits, there was judgment dismissing the suit and from this judgment the plaintiff has appealed.
There was no collusion between defendant and Dr. Davenport to purposely withhold their agreement of sale until after the broker’s contract terminated. After the listing contract' expired on August 20, 1953, Dr. Davenport on one occasion during the first part of October called at defendant’s home and discussed the property with him. Defendant led Dr. Davenport at the time to believe that he was no longer interested in selling the property and Dr. Davenport states that he was very much disappointed. On a later occasion there was a chance meeting between defendant and Dr. Davenport in the downtown section of New Orleans, but the question of de *526 fendant’s property was not discussed at the time. On another occasion Dr. Davenport saw the defendant with members of his family in an automobile one evening and Dr. Davenport waved to defendant. The next contact between Dr. Davenport and defendant occurred about the middle portion of November when Dr. Davenport, who then expected to receive a bona fide offer from someone to purchase his property, called defendant on the telephone and inquired of defendant if he was still willing to sell 7011 Broad Place. Defendant informed Dr. Davenport that he would be willing to sell for $31,500 in cash. Dr. Davenport’s written offer to buy was made a few days later when the sale of his own property became a reality.
We are convinced that Dr. Davenport, after his visit to see defendant in the first part of October, despaired of being able to buy defendant’s property, and it would seem that Mrs. Baus, plaintiff’s saleslady, also believed that there was no likelihood of a sale being made by defendant to Dr. Davenport. The record shows that she, as well as Sullivan & Trenchard, Inc., the other agent, took Dr. Davenport on tours showing him other property which they had listed for sale and which they thought might interest him.
The listing contract provides that defendant would pay a commission in the event of a sale being effected during the term of six months from the date of the contract or on any sale made within forty-five days afterward to any one to whom plaintiff had quoted the property during the term of the contract. These provisions are clear and explicit and are the law between the parties. LSA-C.C. art. 1901. We are aware of no rule of equity, jurisprudence or logic under which the plaintiff would be entitled to recover a commission from defendant under the circumstances we find to exist in the case. No sale of defendant’s property was made during the initial six-month period of the contract or during the forty-five day period mentioned in the contract. Whatever negotiations there were which had been commenced by plaintiff came to an end at least during October when Dr. Davenport made the fruitless visit to defendant’s home. It was not until November when Dr. Davenport had hope of selling his own property that he again contacted the defendant and new negotiations began between them which ultimately led up to the sale. Counsel argue that plaintiff was the procuring cause of the sale, but according to our understanding of the meaning of the term, we do not think so. For the broker to be regarded as the procuring cause, the negotiations which eventually lead to the sale must be the result of some active effort on the part of the broker. Lehmann v. Howard, La.App., 49 So.2d 453. The only effort put forth by the broker in the instant case was to submit a purchase offer from one who was then not ready or able to buy defendant’s property, and after the offer was rejected by defendant, the whole matter seems to have been abandoned by plaintiff and defendant. We do not believe that tire listing contract contemplated that the real estate , agent would be entitled to a commission for producing- a prospective purchaser who is neither ready nor able to buy and who cannot and does not make a firm offer to purchase until a date after the contract with the real estate agent has expired.
For the reasons hereinabove assigned, the judgment appealed from is affirmed.
Affirmed.